IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JILL KILBRIDE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION 07-0389-WS-M |
| | ) |
| STEVE VRONDRAN, *et al.*, | ) |
| | ) |
|     Defendants. | ) |

**ORDER**

    This matter comes before the Court on defendants' Motion to Set Aside Entry of Default (doc. 19). The Motion, which plaintiff opposes, has been briefed and is ripe for disposition.

**I.    Background.**

    Plaintiff Jill Kilbride initiated this action on May 29, 2007 by filing a Complaint (doc. 1) against defendants Steve Vrondran, Perdido Beach Parasailing, GSJ Limited Liability Company, and Kokomos Water Sports, Inc. The Complaint alleges that Kilbride sustained injuries by scraping her leg and shin while disembarking from a boat during a parasailing excursion in Orange Beach, Alabama on May 28, 2006. The Complaint alleges that defendants recklessly and negligently caused the accident through failure properly to maintain the boat, failure to train employees, permitting the boat to be operated recklessly and negligently by an incapable and unskilled employee, and the like. Federal subject matter jurisdiction is predicated on diversity of citizenship, pursuant to 28 U.S.C. § 1332, and plaintiff claims damages exceeding $75,000.

    Plaintiff served process on all four named defendants via private process server on June 26, 2007. (Docs. 9-12.) The service affidavits reflect that all four defendants were served through Vrondran, who accepted personal service of the Summons and Complaint as to him and also accepted service as owner and/or registered agent of the three corporate defendants. The service affidavits further state that Vrondran was contacted by plaintiff's process server, agreed to meet with said process server at a convenience store in Gulf Shores, Alabama, and accepted service of process at that location. The Summonses included standard language that the

defendants were required to serve on plaintiff's counsel an answer to the Complaint within 20 days after service, failing which default judgment would be taken against them for the relief demanded in the Complaint.  Those Summonses also placed defendants on notice that their answers must be filed with the Clerk of Court within a reasonable period of time after service on opposing counsel.  (Docs. 9-12.)

As of July 26, 2007, a month after service of process had been perfected on defendants, defendants had not filed responsive pleadings, nor had they otherwise appeared in this action.  On that date, the undersigned entered a Show Cause Order (doc. 13) directing Kilbride to show cause why she had not sought entry of default and default judgment against defendants for failure to answer or otherwise respond to the Complaint within the time frame provided by the Federal Rules of Civil Procedure.  A copy of that Show Cause Order was mailed by the Clerk's Office to defendants at their service address listed on their service affidavits.  The very next day, on July 27, 2007, plaintiff filed a Motion for Preliminary Default (doc. 14).  On July 30, 2007, a Clerk's Entry of Default (doc. 15) was entered against all four defendants for failure to plead or otherwise defend.  Copies of that Clerk's Entry of Default were mailed by the Clerk's Office to defendants at their service address.

There was no subsequent activity in the docket sheet of this action until August 23, 2007, when defendants, by and through counsel, filed an Answer (doc. 16).  Because those defendants were still laboring under the Clerk's Entry of Default, the Court entered an Order (doc. 18) apprising them that their Answer was improper because it neither mitigated the default nor counteracted its crippling effects on defendants' ability to defend this action while that default remained intact.  The defendants responded by filing their Motion to Set Aside Entry of Default Judgment (doc. 19) on August 31, 2007, just over a month after the Clerk's Entry of Default had been entered.

**II.     Analysis.**

    *A.     Legal Standard.*

Consideration of defendants' Motion begins with the well-worn proposition that "defaults are seen with disfavor because of the strong policy of determining cases on their merits." *Florida Physician's Ins. Co. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993); *see also In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003) (similar).  In that regard, the Eleventh

Circuit has recognized that "a technical error or a slight mistake by a party's attorney should not deprive the party of an opportunity to present the merits of his claim." *Ehlers*, 8 F.3d at 783 (citation omitted). Indeed, "[d]efaults are reserved for rare occasions and when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Canfield v. VSH Restaurant Corp.*, 162 F.R.D. 431, 434 (N.D.N.Y. 1995); *see also McGarey v. York County*, 233 F.R.D. 220, 222 (D. Me. 2006) (rule governing defaults "is tempered by the philosophy that actions should ordinarily be resolved on their merits") (citation omitted); *McMillen v. J.C. Penney Co.*, 205 F.R.D. 557, 558 (D. Nev. 2002) ("Because defaults are generally disfavored, courts resolve such motions so as to encourage a decision on the merits.").

Bearing the disfavored status of defaults in mind, the Court turns to Rule 55(c), Fed.R.Civ.P., which provides that "[f]or good cause shown the court may set aside an entry of default." *Id.*[1] In determining whether the requisite good cause exists, courts balance an array of factors, including principally whether the default was willful, whether setting aside the default would prejudice the plaintiff, and whether the defendant had a meritorious defense. *See, e.g., Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996); *Hinson v. Webster Industries*, 240 F.R.D. 687, 690 (M.D. Ala. 2007) (although "good cause" for Rule 55(c) is not captured by a precise formula, courts consider, among other things, whether default was culpable or willful which entails evaluating the plausibility of the defaulting party's excuse, whether setting aside the default would prejudice the other side, whether the defaulting party presents a meritorious defense, and whether the defaulting party acted promptly to correct default); *see generally KPS & Associates, Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 12 (1st Cir. 2003) (relevant factors include willfulness of default, prejudice to adversary if default is set aside, existence of meritorious defense, movant's explanation for default, parties' good faith, amount of money involved, and timing of motion to set aside default). The "good cause" analysis is not susceptible to a precise formula, but is

---

[1] No default judgment has entered in this case. This is potentially significant, inasmuch as "[t]he excusable neglect standard that courts apply in setting aside a default judgment is more rigorous than the good cause standard that is utilized in setting aside an entry of default." *E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990).

necessarily a flexible inquiry based on the particular circumstances in a given case. *See Compania Interamericana*, 88 F.3d at 951. Accordingly, no talismanic significance is accorded any of these factors; rather, the overarching question is whether circumstances exist that warrant a finding of good cause to set aside the Clerk's Entry of Default against defendants. *Id.* ("Whatever factors are employed, the imperative is that they be regarded simply as a means of identifying circumstances which warrant the finding of 'good cause' to set aside a default.").

### B.   *Application of Legal Standard.*

To support this request for setting aside the default, defendants submit the Affidavit of Steve Vrondran (doc. 19), who is both a named defendant himself and a registered agent or owner of all three corporate defendants. Vrondran explains the default by stating that when he received the papers from plaintiff's process server, he "did not understand that this was an actual lawsuit." (Vrondran Aff., at 1.) He further indicates that by calling plaintiff's counsel, explaining his version of the events alleged in the Complaint, and telling plaintiff's counsel he would furnish witness information to him, Vrondran "believed this to be an answer as required." (*Id.*) Vrondran faults plaintiff's counsel for not advising him during those conversations that he was seeking entry of default. (*Id.*) According to Vrondran's Affidavit, he mentioned the matter to his counsel, Bobby Hornsby, while meeting with him concerning an unrelated matter on August 22, 2007. (*Id.* at 2.) At Hornsby's insistence, Vrondran brought the papers relating to this action to Hornsby's office on the morning of August 23, 2007, at which time Hornsby contacted the Clerk's Office and learned that default had already been entered. (*Id.* at 2.) Hornsby filed an answer on defendants' behalf later that same day.

Vrondran's protestations of ignorance leave much to be desired. For example, his assertion that he "did not understand this was an actual lawsuit" is simply not plausible. On their face, the Summons and Complaint with which he was served on June 26, 2007 indicate that this was indeed an actual lawsuit against him and three companies in which he is involved. Similarly, while Vrondran contacted plaintiff's counsel, it appears undisputed that he failed to do so until August 1, 2007, more than five weeks after service and well after the 20-day deadline specified in the Summons. (Opposition Brief, at Exhs. 5 & 6.) Vrondran does not explain why he tarried for five weeks before telephoning plaintiff's counsel. As for Vrondran's assertion that he believed that talking to plaintiff's counsel on the telephone was sufficient to constitute an

answer, had he read the Summons he would have known that he must file a copy of his answer with the Clerk of Court, so a mere telephone conversation could not have been sufficient. Finally, Vrondran's contention that plaintiff's counsel never told him that a default was in the works is unavailing because the Clerk's Office mailed copies of the Show Cause Order and the Clerk's Entry of Default to Vrondran's service address on July 26, 2007 and July 30, 2007, respectively.  He therefore cannot credibly profess unawareness that default proceedings were underway, and he cannot insinuate that plaintiff's counsel misled him in that regard.[2]

In light of the foregoing, it is evident that the Clerk's Entry of Default against defendants flowed from Vrondran's own dilatory conduct upon being served with process, and his negligent failure to make timely inquiries or to protect defendants' interests herein.  Fortunately for defendants, the analysis does not end there.  That Vrondran voluntarily met with the process server and made contact with plaintiff's counsel, albeit belatedly, is indicative of a willingness to address the claims asserted herein and demonstrates that he was not attempting to evade the lawsuit altogether.  Furthermore, the Court affords some weight to defense counsel's prompt attempts to correct the default upon learning of same.  Taken together, these facts reflect that, while defendants' default was undoubtedly careless, it was neither willful nor egregious.  This is not a case in which defendants simply ignored the Summonses indefinitely, displayed contempt for the judicial system, or sought to manipulate the legal process for their own advantage.

Nor is there any reason to believe that plaintiff will sustain any prejudice by virtue of the default being set aside.  At most, plaintiff asserts that "[i]f the default judgment [*sic*] were set aside, the plaintiff would incur additional costs, fees and distress" (Opposition Brief, at 6) in prosecuting her Complaint on the merits.  That is not sufficient prejudice to warrant denial of a request to set aside an entry of default.  *See E. & J. Gallo Winery v. Cantine Rallo, S.p.A.*, 430 F.

---

[2] Any sympathies that might be aroused by virtue of Vrondran's uncounseled status at that time are greatly mitigated by Vrondran's admission that he had made an appointment with a lawyer for August 22, 2007 to discuss an unrelated matter.  Clearly, his small businessman status notwithstanding, Vrondran has ready access to counsel and could have made a phone call to his attorney requesting legal advice concerning this matter well before August 22, 2007 had he seen fit to do so.  Thus, any confusion Vrondran may have experienced about the meaning and implications of the papers served on him on June 26, 2007 is entirely his own fault because he failed to undertake reasonable and readily available measures to alleviate that confusion.

Supp.2d 1064, 1091 (E.D. Cal. 2005) ("Having to try a case on the merits is not, without more, sufficient prejudice," where plaintiff's ability to pursue her claim is not hindered); *Capital Yacht Club v Vessel AVIVA*, 228 F.R.D. 389, 394 (D.D.C. 2005) ("delay and legal costs are part and parcel of litigation and typically do not constitute prejudice for the purposes of Rule 55(c)"); *see generally Thompson v. American Home Assur. Co.*, 95 F.3d 429, 433-34 (6th Cir. 1996) (to be deemed prejudicial, setting aside of default must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion). Any delay in resolution of these proceedings attributable to the default is minor, inasmuch as defendants appeared less than two months after process was served on them. This relatively brief delay does not amount to legally cognizable prejudice, either. *See Burrell v. Henderson*, 434 F.3d 826, 835 (6th Cir. 2006) (delay in adjudicating plaintiff's claim, without more, is not sufficient prejudice under Rule 55). Hence, the absence of any cognizable prejudice to Kilbride is another factor favoring the granting of the relief requested by defendants.

      The Court is also persuaded that defendants have made a sufficient showing of a meritorious defense to warrant setting aside the entry of default. "In order to make a sufficient showing of a meritorious defense in connection with a motion to vacate a default judgment, the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense." *State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 167 (2nd Cir. 2004); *see Burrell*, 434 F.3d at 834 ("A defense is meritorious if there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default.") (citation omitted). The following evidence submitted by defendants is sufficient to satisfy their burden on the meritorious defense prong of the "good cause" inquiry: (1) Vrondran avers in his Affidavit that defendants' standard procedure is to instruct customers as to the safe method of disembarking, but that Kilbride failed to follow those instructions; (2) Vrondran further avers and provides a copy of a form captioned "Contractual Assumption and Acknowledgment of Risks and Liability Waiver and Release Arrangement," and purporting to have been signed by Kilbride on the date of the accident (doc. 23); (3) Vrondran also avers that when he spoke with Kilbride after the accident she indicated that she was doing fine, in marked contrast to the injuries claimed in the Complaint; and (4) according to Vrondran's Affidavit, defendants Kokomo and GSJ have no connection to the

allegations of the Complaint and have been incorrectly named as defendants herein.  The Court expresses no opinion at this stage as to the veracity of any of these allegations; however, such facts, if proven and if supported by the law with respect to the written waiver and release, would rise to the level of a complete defense.  Therefore, the Court readily finds that defendants have shown a meritorious defense.

### III.     Conclusion.

Based on the Court's determinations that defendants' default was careless but not willful, that defendants did not evade the lawsuit but made an attempt (albeit belatedly) to address same with plaintiff's counsel, that defendants' counsel took immediate action to correct the default upon learning of same, that plaintiff would suffer no prejudice if the default were set aside, and that defendants have shown a meritorious defense, and expressly considering the federal judiciary's strong preference for resolving disputes on their merits, the Court concludes that defendants have shown good cause for setting aside the default.  Accordingly, defendants' Motion to Set Aside Entry of Default (doc. 19) is **granted**, and the Clerk's Entry of Default (doc. 15) is hereby **set aside** pursuant to Rule 55(c), Fed.R.Civ.P.  Defendants are **ordered**, on or before **October 1, 2007**, to file an Amended Answer correcting the deficiencies set forth in footnote 2 of the Order (doc. 18) entered on August 27, 2007.

DONE and ORDERED this 21st day of September, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE